[No. 32191.   Department One.   December 11, 1952.]

JAMES P. SHOOK *et al., Respondents,* v. GLENN F. BRISTOW *et al., Appellants.*[1]

[1]Reported in 250 P. (2d) 946.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *F. V. Betts,* for appellants.

*Arthur R. Paulsen,* for respondents.

DONWORTH, J.—This action arose from a collision which occurred between two automobiles at the intersection of the Seattle-Tacoma highway and Ardena and Anderson roads, a few miles northeast of Tacoma. The Seattle-Tacoma highway, commonly known as U. S. 99, is an arterial highway, while the intersecting roads are not.

For convenience, we shall refer to plaintiff and defendant husbands as if they were the sole parties to the action.

Plaintiff, the disfavored driver, sought to recover general and special damages in the sum of $11,065. Defendant, who was traveling toward Tacoma on the arterial, cross-complained for damage to his automobile. Each party denied the material allegations made by the other.

The action was tried before the court, sitting with a jury. Defendant's motions for a dismissal at the close of plaintiff's case and for a directed verdict at the close of all the evidence were denied, and the case went to the jury, which returned a verdict for plaintiff in the sum of eight hundred dollars.

Thereafter, defendant filed a motion for judgment notwithstanding the verdict, and plaintiff moved for a new trial. The court entered an order in which, after reviewing the evidence at length and stating its reasons, it denied defendant's motion and granted plaintiff's motion for a new trial on the ground that the verdict was so inadequate as to

indicate that it was the result of passion or prejudice. Defendant has appealed from that order.

While appellant has assigned as one of the errors of which he complains the court's action in granting respondent a new trial, he has not argued the assignment. Respondent's wife suffered severe injuries as a result of the collision, and it is not questioned that, if respondent is entitled to recover from appellant, the verdict for eight hundred dollars was wholly inadequate and cannot be permitted to stand. Appellant has also assigned error to the court's denial of his motions for a directed verdict and for judgment notwithstanding the verdict. His sole argument in support of that assignment of error is that respondent was guilty of contributory negligence as a matter of law.

▆▆ In considering appellant's argument, we bear in mind the following rules: (1) That the question whether there has been negligence or contributory negligence is one for the jury unless the facts are such that all reasonable men must draw the same conclusion from them, in which event the question is one of law for the court; (2) that a motion for a directed verdict or for judgment notwithstanding the verdict admits the truth of respondent's evidence and all inferences that reasonably can be drawn therefrom and requires that the evidence be interpreted most strongly against appellant and in the light most favorable to respondent. *Neel v. Henne,* 30 Wn. (2d) 24, 190 P. (2d) 775, and cases cited.

The evidence, interpreted in the light most favorable to respondent, is as follows:

On a Sunday evening, August 21, 1949, a short time after eight p. m. (daylight saving time) respondent drove his 1937 Plymouth sedan north on Ardena road to a point where the road intersects U. S. 99. This is a heavily traveled, paved, four-lane arterial highway. At some point west of the intersection, it commences a long sweeping curve to the north in the direction of Seattle, and at the intersection it extends in a generally southwest to northeast direction. Ardena road intersects and crosses the arterial highway at approximately a forty-five degree angle. North of U. S. 99 the road is known as Anderson road.

Respondent stopped on Ardena road about ten feet south of the paved section of the arterial. He intended to cross the highway and proceed north on Anderson road. Because of the angle of the intersection, he had ninety feet of arterial highway to cross. Added to this distance was the length of his car, which he estimated to be between fourteen and sixteen feet. Therefore, the rear end of his car had in all approximately one hundred five feet to travel in order to completely clear the four lanes of the arterial.

The two lanes nearest him as he waited to cross carried Seattle-bound traffic, which approached from his left. The two farthest lanes carried Tacoma-bound traffic, which approached from his right. The highway was divided in the center by a four-foot wide dirt strip.

The traffic on U. S. 99 was heavy, and respondent waited two or three minutes for it to clear sufficiently for him to cross. It was late enough in the evening that he had turned on his dim lights, but visibility was good and the pavement was dry. Because of the curve of the highway, however, his unobstructed view to the left toward Tacoma was limited to an estimated seven hundred feet. A sharper curve in the highway to his right limited his view of the two Tacoma-bound lanes to a distance of five hundred feet (as he measured it subsequent to the accident).

The traffic cleared, and respondent entered upon the highway when there were no vehicles in sight in either direction. When he was in the first or outside lane of the Seattle-bound half of the highway, he looked to his left and observed cars in each of the Seattle-bound lanes about seven hundred feet away. The two leading cars were abreast and were approaching at a high rate of speed. It is a reasonable inference that they were traveling at the maximum lawful speed of fifty miles per hour. If so, they were approaching him at the rate of seventy-three and one-third feet per second. Respondent paid no further attention to them because he then judged that they presented no danger to him.

While in the first lane, he also observed a Ford traveling toward Tacoma, which rounded the curve five hundred feet to his right. The Ford was in the fourth or outside lane of

the Tacoma-bound half of the highway. Respondent then judged that he had ample time to cross ahead of the Ford, which, according to appellant, was traveling forty or forty-five miles per hour. Respondent continued across the highway, increasing his speed.

As he neared the four-foot dividing strip in the center of the highway, he glanced again to his right and for the first time saw appellant's car, which was in the inside lane, passing the Ford, four hundred feet away. He then judged appellant's speed to be at least seventy miles per hour.

Respondent could then have stopped his car in about ten feet, or less than the car's length. He did not do so but attempted to accelerate his speed still more. His wife, who was sitting alongside him in the front seat, also saw appellant's car approaching at high speed and urged her husband to hurry.

As he crossed the four-foot dividing strip, he observed that appellant was then only three hundred feet away, still traveling in the inside lane. As respondent proceeded to cross the last two lanes of the highway, he observed appellant, then two hundred feet away, increasing his speed and moving from the inside lane into the outside lane. Respondent felt his front wheels enter onto the unpaved shoulder on the north side of the highway. At that time he saw appellant's car almost upon him and he turned to the left in an effort to avoid a collision. Appellant testified that he first applied his brakes when he was twelve feet from respondent's car.

When all of respondent's car except the back one-third had left the highway, the right front end of appellant's car struck his right rear wheel. The force of the collision turned his car around so that it faced south, and it came to rest about eight feet off the highway and eight feet west of Anderson road. Appellant's car continued southwest for approximately seventy-five feet and came to rest in the inside lane. Neither car upset.

At no time did respondent hesitate after he started to cross the highway, but he continuously increased his speed.

He estimated that his speed did not exceed twenty miles per hour up to the time of the collision.

Appellant does not argue that the jury would not be justified in finding that he was negligent in colliding with respondent. But he urges that, in view of RCW 46.60.170, respondent was guilty of contributory negligence as a matter of law in attempting to cross in front of him. The statute reads as follows:

"The operator of a vehicle shall stop as required by law at the entrance to any intersection with an arterial public highway, and having stopped shall look out for and give right of way to *any vehicles upon the arterial highway* simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection." (Italics ours.)

Appellant relies upon the second rule laid down by this court in *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533. The rule, as modified for intersections with arterial highways, is that the primary duty of avoiding a collision rests upon the driver who enters the arterial highway, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times. Appellant has cited a number of cases in which we have emphasized the primary duty which rests upon the disfavored driver and have held that he is negligent as a matter of law in racing for the right of way when he could have avoided a collision by slowing down or stopping. We have specifically held that a period of time up to four seconds is not a fair margin of safety. *Emanuel v. Wise,* 11 Wn. (2d) 198, 118 P. (2d) 969; *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265; *Plenderlieth v. McGuire,* 27 Wn. (2d) 841, 180 P. (2d) 808; *Shultes v. Halpin,* 33 Wn. (2d) 294, 205 P. (2d) 1201.

It is further contended by appellant that his speed in excess of seventy miles per hour intensified, rather than diminished, respondent's duty to yield the right of way, citing *Anderson v. Wheeler,* 182 Wash. 249, 46 P. (2d) 726.

Appellant also argues that respondent cannot come within the exception to the intersection rules of *Martin v. Haden-*

*feldt, supra,* in that he was not deceived and knew, when he saw appellant four hundred feet away, that appellant was traveling at an unlawful speed in excess of seventy miles per hour.

Appellant further relies upon *McAllister v. Anderson,* 169 Wash. 14, 13 P. (2d) 36, wherein we said:

"One about to cross such an arterial highway, seeing a car rapidly rounding a curve and heading toward him but two hundred feet away, should instantly stop his car before entering the zone of danger, rather than to attempt to win in a contest for the right of way.

"Here it is apparent that, immediately after appellants' car started in motion and before it entered the zone of danger, its driver could and should have stopped it and permitted the traveler on the arterial. highway to pass. Appellant was the disfavored driver. He was bound to look out for and yield to the traveler on the arterial highway. It was his duty to know, if he reasonably could, the speed at which the other was traveling, and to avoid him even though he might be driving negligently. Not having followed the obviously safe and prudent course, the appellants were guilty of contributory negligence, and the facts being undisputed and coming from their own lips, the trial court properly held that they were so guilty, as a matter of law."

Appellant maintains that respondent, by his own testimony, felt that the cars approaching from his left were no danger to him and that he could have safely stopped his car before it entered the Tacoma-bound half of the highway and thus permitted appellant to pass through the intersection.

■ We may concede that the cases cited by appellant and the rules contained therein are sound, but we have recognized that no two automobile collision cases are exactly alike, and that no fixed rule can be laid down which will specifically cover every variation of fact in different cases. *Billingsley v. Rovig-Temple Co., supra,* and cases cited. The facts of the present case are materially different from those of the several cases cited by appellant.

■ The rules enunciated in *Martin v. Hadenfeldt, supra,* apply to drivers at intersections with arterials, with the exception that the disfavored driver at an arterial intersection

has the primary duty to yield the right of way not only to vehicles approaching from his right, but also to those approaching from his left as well. *Brum v. Hammermeister,* 169 Wash. 659, 14 P. (2d) 700, affirmed on rehearing, 171 Wash. 702, 18 P. (2d) 1119; *Garrett v. Standard Oil Co.,* 173 Wash. 394, 23 P. (2d) 402; *Weikert v. Daniels,* 178 Wash. 416, 35 P. (2d) 22; *Bennett v. Karnowsky,* 24 Wn. (2d) 487, 166 P. (2d) 192.

There can be no doubt that respondent was not negligent if he entered the arterial at a time when no traffic was visible either to his left or right. *Bennett v. Karnowsky, supra.* We are bound to assume for our present purposes that he did so.

The jury could have found that he was not negligent in proceeding to cross the arterial after seeing cars approaching from opposite directions seven hundred and five hundred feet away, when he reasonably judged them to be no hazard to him. It was not until he had crossed almost half of the ninety-foot wide highway that a peril, appellant's speeding car, presented itself. At that time, respondent was confronted with a sudden emergency which was not of his own creation. He was in a car fourteen to sixteen feet long, which necessarily would block one, or possibly two, of the four lanes of travel. All four lanes were occupied with cars at varying distances. He owed as much duty to yield the right of way to the cars coming from Tacoma as he did to those proceeding toward Tacoma. The four-foot center strip was no protection to him. Under these circumstances, was respondent guilty of contributory negligence as a matter of law in continuing across the arterial in an attempt to get out of the zone of danger?

Appellant argues that respondent could then have stopped and allowed appellant to pass in front of him, and that he was not endangered by the cars approaching from seven hundred feet to his left because he did not consider those cars to be any danger to him. We think, however, that it is a reasonable inference from respondent's testimony that he knew, *when he was in the first lane,* that the cars on his left constituted no potential danger to him at that time if he

continued through the intersection. They were two abreast and, we may assume from respondent's testimony, were approaching at the lawful speed of fifty miles per hour or at the rate of seventy-three and one-third feet per second. By the time he crossed the first lane and arrived at the point where he first saw appellant's car approaching in the third lane, those cars would then necessarily have materially lessened his fair margin of safety as to them.

It was appellant's testimony that another car was following him in the inside or third lane. The traffic had been heavy and whether, if respondent had stopped before entering the Tacoma-bound half of the highway and allowed traffic thereon to pass, he could have resumed his crossing and escaped from the path of the cars approaching from his left, is at least doubtful. As above noted, the four-foot wide center strip did not provide sufficient space in which to park his car.

■ The evidence to which we have just referred was sufficient, in our opinion, to warrant the court's instructing the jury upon the doctrine of reasonable care in a sudden emergency. The jury could have found that respondent was confronted, without fault on his part, with the sudden peril of being trapped near the center of the highway. Whether, in that emergency, he acted as a reasonably prudent person in continuing across the highway, is a question upon which the minds of reasonable men might differ. It was, therefore, a jury question, and we cannot say, as a matter of law, that respondent was negligent in so doing.

We do not think that it militates against respondent's plea of the emergency doctrine that he did not, when near the center of the highway, again glance to his left to determine what threat was presented to him from that direction. His paramount concern was to observe appellant's car. That he reasonably felt that he was confronted with an emergency appears from his testimony:

"I kept on going because there wasn't much else left to do. . . . It is a very poor place for anybody to think about trying to stop in the center of that highway, when you

see plenty of cars, two abreast, coming from—northbound from Tacoma, and getting closer every second."

As a result of the emergency, respondent is also entitled to the benefit of the exception to the intersection rule. While he was not deceived as to appellant's speed of seventy miles per hour when four hundred feet away, there is evidence that appellant thereafter increased his speed and swerved from the inside (third) lane into the outside (fourth) lane.

There was testimony that appellant at that time increased his speed. If he increased it by five miles per hour or more, he thereby caused a collision which otherwise would not have taken place. The collision occurred in the outside (fourth) lane when at least the front end of respondent's car, according to his and his wife's testimony, had cleared the highway. After appellant had traveled for two hundred feet in the inside (third) lane from the time respondent first observed him, respondent was entitled to proceed in reliance upon his continuing in that lane. The jury could have found that, if appellant had done so, rather than increasing his already unlawful speed and changing lanes in an attempt to cross in front of respondent, the collision would not have occurred, and that it did occur solely because of appellant's negligence and without fault on the part of respondent.

We, therefore, conclude that the evidence presented at the trial made the issue of respondent's contributory negligence a question for the jury to determine under proper instructions from the court.

The trial court did not err in denying appellant's motion for a directed verdict and for judgment notwithstanding the verdict.

Appellant's third assignment of error, that the trial court erred in granting respondent's motion for a new trial, has not been argued by appellant and is, therefore, waived. *Fowles v. Sweeney, ante* p. 182, 248 P. (2d) 400.

The order appealed from is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.