[No. 32616.   Department Two.   May 13, 1954.]

EARL KINDELSPIRE *et al., Appellants,* v. JAMES LAWRENCE *et al., Respondents.*[1]

*Greenwood & Shiers,* for appellants.

*Frederick B. Cohen* and *John E. Bowen,* for respondents.

WEAVER, J.—In an action for injuries, caused by the discharge of a tear gas projector, plaintiff set forth two theories of alleged liability:   (1) that he was injured by a willful

[1]Reported in 270 P. (2d) 477.

and intentional assault upon his person, committed by defendant; and (2) that his injuries resulted from the careless and negligent conduct of defendant.

The trial court denied defendant's motion to require plaintiff to separately state the cause of action. By affirmative defenses, defendant pleaded justification and self-defense to the first theory, and contributory negligence to the second.

The jury was instructed on both theories. Plaintiff took no exceptions to the instructions given. A verdict for defendant was returned by the jury. There is nothing to indicate whether the jury, in reaching the verdict, accepted one theory of defense and rejected the other, or accepted both.

Plaintiff appeals from a judgment dismissing his action with prejudice. (The wives of the parties are not involved. We refer to Earl Kindelspire as the sole plaintiff and appellant and to James Lawrence as the only defendant and respondent.)

Appellant's four assignments of error are argued under two headings: (1) the court erred when it refused to grant motions for (a) an instructed verdict, and for (b) judgment notwithstanding the verdict of the jury or for a new trial; and (2) the court erred when it refused to give a requested instruction.

The first group of assignments of error admits the truth of respondent's evidence and all inferences that reasonably can be drawn therefrom. It requires that the evidence be interpreted most strongly against appellant and in the light most favorable to respondent. *Shook v. Bristow*, 41 Wn. (2d) 623, 625, 250 P. (2d) 946 (1952), and cases cited.

The evidence, interpreted in the light most favorable to respondent, which the jury was entitled to believe, is as follows:

Mr. Kindelspire, a transfer company helper, quit work about two o'clock p. m., on a Saturday. He spent the next several hours in a bar, where he had three or four drinks of whiskey. About five o'clock p. m., he met Leonard Plumb and had another drink with him. They decided to go to

Mr. Plumb's house. On the way there, Mr. Kindelspire purchased a fifth of whiskey. At the Plumb's house, the two men and Mrs. Plumb drank a quart of beer. None of them had had dinner when they left the Plumb residence between eight and eight-thirty o'clock p. m. to drive Mr. Kindelspire to his home.

They stopped in front of Mr. Lawrence's grocery store. Mr. Kindelspire entered, carrying his coat and the package containing his bottle of whiskey, placed them on the counter, and ordered certain groceries.

Lawrence, who was alone in the store, was preparing to close. He had the store's cash receipts for the week, about three thousand dollars, together with approximately six hundred dollars in the post office substation, located in the store. Lawrence testified that, when Kindelspire entered, "he seemed to be pretty drunk so I went up to see if I could help him."

When Lawrence could not produce the exact item ordered (a half pound of prepackaged hamburger), Kindelspire became irate. He cursed and swore. Lawrence testified that Kindelspire's language was so vile that "it was to the point where it was nauseating. . . ." Kindelspire refused to leave the premises. Lawrence then went behind the counter, picked up a tear gas projector, and snapped the trigger (the safety catch was on). Kindelspire held up his arm, in a protecting manner, and rushed toward the door saying, "I will get you." Lawrence followed him to the entrance.

After Kindelspire reached the street, Mrs. Plumb noticed that he did not have his package, which he had carried into the store. Mr. Plumb entered the store to get it.

In the meantime, Lawrence had returned to the counter to put the gas projector away and call the sheriff. Kindelspire followed Plumb into the store. He had his coat spread over his arms, from wrist to wrist, so that his hands were concealed. When Lawrence saw him he said: "I thought I told you to get out of here."

When asked, "Were you apprehensive when Mr. Kindelspire came back into the store the second time?" Mr. Lawrence replied,

"I was when he wouldn't stop. He had seen this projector before he went out, and when he saw fit to come back in, I thought he must be better-equipped or something."

As Kindelspire approached, Lawrence discharged the tear gas projector. The charge hit him on the upper chest or face. Lawrence testified,

". . . I don't know exactly what happened but I might have intended to snap it again, but when I did it, it went off . . ."

Kindelspire was taken home and put to bed by friends. He did not seek medical aid until eleven o'clock the next morning. As a result of the discharge of tear gas, Kindelspire's vision is limited to distinguishing between light and dark. Prior to this incident, he was classed as "industrially blind", although capable of working as a transfer company helper.

In *Rettinger v. Bresnahan,* 42 Wn. (2d) 631, 633, 257 P. (2d) 633 (1953), this court said:

"It is the province of the jury to weigh the evidence, under proper instructions, and determine the facts. It is the province of the jury to believe, or disbelieve, any witness whose testimony it is called upon to consider. If there is substantial evidence (as distinguished from a scintilla) on both sides of an issue, what the trial court believes after hearing the testimony, and what this court believes after reading the record, is immaterial. The finding of the jury, upon substantial, conflicting evidence properly submitted to it, is final."

■■ The record discloses substantial evidence which, if believed, supports the verdict of the jury. The trial court did not err when it refused to direct a verdict for plaintiff and when it denied the motion for judgment notwithstanding the verdict of the jury. Since there was a case for the jury, it was not an abuse of discretion to deny the motion for a new trial. *Rettinger v. Bresnahan, supra.*

The tear gas projector is a metal cylinder six and one-half inches long and approximately three quarters of an inch in diameter. One end is open; the other is closed by a

metal knob (an inch and one quarter in diameter) which fits into the palm of the hand.

The tear gas shell is the same size and shape as a 20-gauge shot gun shell. The projector is loaded by unscrewing the front two and three-quarter inches of the cylinder, inserting the tear gas shell, and replacing the portion removed.

When the projector is held in the hand, the thumb of the holder rests upon a small knob which extends to a spring firing mechanism in the interior of the cylinder. The knob operates in a slot. To fire the projector, the knob is released. The spring causes the knob and firing mechanism to fly forward in the slot, thus exploding the tear gas shell.

The appellant's amended complaint alleged:

"That the tear gas gun hereinabove referred to was at said time and place a dangerous weapon and was a fire arm likely to produce great and lasting bodily harm all of which was then and there known to the said James Lawrence [defendant and respondent] or with reasonable care should have been known to him."

This allegation was denied by respondent's answer. Thus, an issue of fact was presented: Is the tear gas projector a dangerous weapon and a firearm?

In the evidence, there is considerable conflicting expert testimony of whether the gas projector is a firearm; and also conflicting expert testimony regarding the conditions of use under which it might be considered a dangerous weapon.

Presented with this situation, the trial court instructed:

"You are instructed that under the law of the State of Washington every person who aims any gun, pistol, revolver, or other firearm, whether loaded or not at or toward any human being, is guilty of a misdemeanor. It is also unlawful for any person to unlawfully and without justification assault another with an instrument or thing likely to produce bodily harm. It follows, therefore, that any person who does any of the things above enumerated is negligent as a matter of law unless justified in so doing. If you should determine from the evidence that the gas gun or projector used by the defendant Lawrence in this case comes within the class of firearms above mentioned and that the defendant Lawrence was justified in pointing said firearm at the

plaintiff Kindelspire for the purpose of scaring or deterring him from then and there doing bodily injury to the defendant Lawrence and then and there negligently and carelessly fired said gun into the face of the plaintiff Kindelspire with resultant injury then the plaintiff is entitled to recover damages in this case."

Appellant took no exception to this instruction. It became the law of the case. *Ralston v. Vessey,* 43 Wn. (2d) 76, 78, 260 P. (2d) 324 (1953), and cases cited.

Additional, unchallenged instructions defined the elements the jury should consider, when determining whether the gas projector was within the class of firearms mentioned in the first sentence of the quoted instruction. The law to which the instruction refers is RCW 9.41.230.

Under the situation developed by the pleadings and evidence in this case, it was not error for the court to refuse appellant's requested instruction that the gas projector was a firearm and a dangerous weapon as a matter of law, for requested instructions inapplicable to the pleadings and evidence are properly refused. *Hall v. Lawton,* 36 Wn. (2d) 317, 319, 217 P. (2d) 796 (1950), and cases cited.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.