[No. 37183.   En Banc.   July 15, 1965.]

NEAL JOHNSON, *Individually and as Guardian, Respondent,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*[*]

Dean H. Eastman and Robert J. Allerdice, for appellant.

Parker & Parker, for respondent.

OTT, J.—March 8, 1962, Mark Edward Johnson was riding his bicycle to school on the Olympic Highway near the Central Park community. He was injured when he rode across the center line of the highway, striking the left front fender of an oncoming panel truck operated by Cecil Gower and belonging to the Northern Pacific Railway Company.

[*]Reported in 404 P.2d 444.

Neal Johnson, as guardian ad litem for his minor son, commenced this action for damages against the Northern Pacific Railway Company, contending that its driver was negligent. The railway company answered the complaint, denied negligence, and, as an affirmative defense, alleged that Mark's injuries resulted solely from his own negligence. The court instructed the jury that the defendant Northern Pacific Railway Company was negligent as a matter of law. The jury was also instructed on the issue of Mark's alleged contributory negligence. The jury returned a verdict for the plaintiff.

From the judgment entered upon the verdict, the defendant has appealed.

Appellant urges that the court erred in instructing the jury that the appellant's driver was negligent as a matter of law. The evidence was substantially as follows:

The accident occurred March 8, 1962, a bright, clear day, between 8:30 and 8:50 a. m., several miles from Aberdeen. The highway in this vicinity is straight, and visibility is uninterrupted for several thousand feet. At the site of the accident, a "T" intersection, the Olympic Highway runs approximately east and west and is intersected by Hill Road from the south. The paved portion of the highway is 10 feet on each side of the center line. A blacktopped shoulder extends along each side of the highway.

The appellant's driver, Cecil Gower, was familiar with the highway, having driven this route two or three times a week for several years while in the employ of the defendant. On the day in question, he was proceeding in an easterly direction on the Olympic Highway and, as he approached the Hill Road intersection, he noticed Mark Edward Johnson, on a bicycle, approaching on the opposite shoulder of the highway some 400 to 500 yards distant. Mark was proceeding to the school located on Hill Road some four or five blocks from the intersection. There were no signs on the highway indicating a school zone. Mr. Gower was driving the appellant's Chevrolet pickup on his right side of the highway, some two feet from the center line,

and at a speed of approximately 40 to 45 miles an hour, in a 60-mile zone. In describing the accident, Mr. Gower testified:

> Q. Did you notice any other children besides this particular boy on the highway? A. Not that I can recall. No. Q. At that particular time. Now, we are still at this particular point of time when you were adjacent to the Central Park store. Do you remember where this boy that you saw was in relation to Hill Road, which is a T-shaped intersection? A. You mean do I remember how far east or west in relation to the intersection? A. Yes. A. He was east of the intersection. How far, I wouldn't hazard a guess. Possibly one hundred yards. Q. Now, when you observed the boy, what did he do as you were traveling east? A. What did he do? Q. Yes. A. Well, he swerved the vehicle across the highway in front of me. Q. Did you observe him at all particular times? A. Well, you mean— Q. (Interrupting) As you were traveling east on the highway, did you notice the boy doing anything in particular? A. No. Q. Were you watching him all the time? A. Well, you can't watch one particular place every minute and drive. I glanced at him as driving conditions would permit. . . . Q. [cross-examination] Further than that when you last saw him. Well, would it have been one hundred feet from the intersection of Hill Road and the highway when you last looked at him? A. When I observed the boy I was about fifty feet from him.

Frank Payne, Jr., who was driving behind the appellant's pickup, testified that the appellant's driver was proceeding at a moderate speed, to the right of the center line; that he swerved further to the right as Mark rode his bicycle into the left front fender of the pickup, and that he brought the vehicle to a stop promptly.

An expert witness testified that Cecil Gower stopped the vehicle well within the allotted distance for a panel truck traveling 40 to 45 miles an hour.

Mark suffered retrograde amnesia and could not remember the events which occurred when he rode his bicycle into the path of the oncoming truck. He did testify that he was nearly 12 years old and a student in the sixth grade; that he had ridden his bicycle to school on this highway for

three years, and that he was familiar with the rules of the road and had always observed them. He remembered that only a split second before the accident the following occurred:

Q. . . . Now this morning that the accident occurred, do you have any recollection after you got on the shoulder of the road, do you have any recollection of seeing anybody else? A. I saw someone. I slightly remember seeing someone and waving to them. Q. This was while you were riding down the shoulder of the road? A. What? Yes. Q. This was while you were riding down the shoulder. This someone was who, a person? A. Yes. Q. Was it a school chum of yours? A. Someone I had known at school. Q. And he was on the other side of the road? A. Yes. He was on the other side of the road, turning into Hill Road. He had come from the other side. Q. He was already headed down Hill Road, turning into Hill Road and heading down Hill Road. He was on his bike? A. Yes. Q. And you waved at him? A. Yes. Q. You remember waving at him? A. (Nodding affirmatively)

Although there was no evidence to dispute the testimony that appellant's driver did watch the boy approaching, "as driving conditions would permit," the trial court held, as a matter of law, that the appellant's driver "failed to exercise reasonable and ordinary care to keep a proper lookout for the safety of Mark Edward Johnson." The trial judge, in commenting on the evidence in this regard, concluded:

the *believable* testimony, is that he wasn't actually ever aware again of that boy *sufficiently* to be concerned about him until he is practically on the center line of the highway in front of him. (Italics ours.)

■ The evidence established that appellant's driver, Cecil Gower, had kept the boy under observation as continuously "as driving conditions would permit"; that he had observed Mark, riding his bicycle on the opposite side of the highway, at least 3 times within approximately 22 seconds at distances ranging from 500 yards to 50 feet, and that Mark, at the "T" intersection, suddenly rode his bicycle so abruptly to his left in front of the pickup that Mr. Gower was unable, even by swerving his vehicle, to prevent the

bicycle from striking the left front fender. His testimony on this issue was that, "As soon as I saw him, why I started to take measures to get out of his road. I applied my brakes and I swerved hard to the right." Reasonable minds could conclude from these facts that appellant's driver was not negligent. *Wilkinson v. Martin*, 56 Wn.2d 921, 349 P.2d 608 (1960), and cases cited.

■ The legislature has enacted a special statute relating to those highways where cyclists are permitted to ride bicycles. RCW 46.47.020 provides in part:

> Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to a driver of a motor vehicle . . . .

A minor on a bicycle is subject to the same rules of the road as a driver of a motor vehicle. Until such time as the minor is observed in a position of peril, a motorist has a right to assume that the minor will observe the rules of the road. This court has said that a motorist must exercise a higher degree of care for the safety of a minor using the highway, when the motorist observes the minor in a position of peril. *Shellenberger v. Zeman*, 48 Wn.2d 885, 297 P.2d 247 (1956). Whether a person has exercised due care for the safety of other users of the highway is a factual issue to be determined only by the trier of the facts.

In the instant case, the jury was summoned to determine this factual issue. When the judge said that " . . . the *believable* testimony, is that he wasn't actually ever aware again of that boy *sufficiently* to be concerned about him," he usurped the function of the jury. The court erred in instructing the jury that appellant's driver was negligent as a matter of law.

■ Appellant next contends that the facts establish that Mark was guilty of contributory negligence as a matter of law, and that the cause should therefore be dismissed. We do not agree. The legislature, in enacting the bicycle statute, has provided that the issue of contributory negligence on the part of a minor under 16 years of age is to be

resolved by the trier of the facts. In this regard, RCW 46.47-.090 provides in part:

> *Provided,* That no violation of this chapter by any child under the age of sixteen years, or by a parent or guardian of such child shall constitute *negligence per se* in any civil action brought or defended by or in behalf of such child. (Italics ours.)

Mark was nearly 12 years of age. The issue of contributory negligence was presented to the jury. In finding no contributory negligence, the jury could have been influenced by the court's instruction that appellant's driver was negligent as a matter of law. Upon retrial, the issues of primary negligence and of contributory negligence are to be submitted to the jury under proper instructions. Appellant's requested instruction predicated upon *Shellenberger v. Zeman, supra,* and RCW 46.47.020 should be given.

The judgment is reversed, and the cause remanded with instructions to grant a new trial.

HILL, DONWORTH, HUNTER, and HALE, JJ., and BARNETT, J. Pro Tem., concur.

FINLEY, J. (dissenting)—This case does not involve a new, novel or major problem of jurisprudence in this state, and I have hesitated to dissent. However, the differences I have with the majority respecting (1) applicable principles of law, and (2) the operable facts, seem to me to justify adding a few more pages to the official reports. In a nutshell, it may be a matter of personal opinion, but I am concerned that the majority (a) confuses and misapplies certain principles of law, and (b) misconceives or misunderstands the operable or controlling facts. However, before further elaboration as to the foregoing observations, a brief reorientation as to what "all the shooting is about" may be helpful to the reader.

This is a personal injury-damages action. It is brought by a guardian ad litem in behalf of his minor son, who was 11 years old at the time he sustained injuries in a truck-bicycle collision. The jury returned a verdict in behalf of the injured minor.

In this appeal the appellant urges that the trial judge committed error (1) by instructing the jury that the driver of the truck was negligent as a matter of law, and (2) by refusing to instruct the jury that the minor-bicyclist was contributorily negligent as a matter of law. The majority opinion finds merit only in appellant's first assignment of error, and on this basis the case is remanded for a new trial. In this dissent I am concerned and disagree only with the majority's disposition of appellant's first assignment of error.

Now, to recap the controlling facts briefly: The Olympic Highway, in the vicinity of the Hill Road intersection, is straight, and visibility is unobstructed for a distance of several thousand feet. At the "T" intersection of Hill Road—scene of the accident—the Olympic Highway runs roughly east and west. Hill Road intersects from the south. The Olympic Highway consists of a concrete strip, 20 feet wide, with a black-top shoulder to the south, 10 feet wide. At a point about 60 feet from each of the intersecting lines of Hill Road, the southern shoulder of the Olympic Highway widens in an arc, extending from a width of about 10 feet to a width of about 33½ feet at the point on the highway where the lines of Hill Road, if extended, would intersect the Olympic Highway.

The driver of the truck was traveling east, between 45 to 50 miles per hour. Visibility to the east was good for approximately two or three miles down the Olympic Highway. The truck driver's testimony is confusing as to where the boy was when the truck driver first saw the boy riding the bicycle, proceeding west toward the intersection on the north shoulder of the highway. However, the truck driver's testimony irrevocably establishes that he was not again specifically or consciously aware of the presence of the minor-bicyclist on the highway until he saw the boy in the intersection, crossing the highway about two feet south of the center line, and only approximately 50 feet in front of the truck. The truck driver was at no time confronted with any unusual, difficult or dangerous driving conditions.

He was in no way distracted by other automobiles on the highway; none had been observed approaching him on the highway, and none was ahead of him proceeding east on the highway. It is quite significant that the truck swerved to the right only about six inches immediately prior to the impact. After the impact, the truck proceeded approximately 150 feet before stopping.

The driver testified that he knew that the highway traversed a rural residential area, and that a number of children lived in the general locality of the intersection. Subsequent to the accident, the speed limit was lowered to 50 miles per hour, and the intersection was marked with a painted crosswalk, a flashing yellow light, and signs warning of a pedestrian crossing were put on the highway. The defendant driver testified that he knew a school was located to the south of the highway, and that children on their way to school crossed the highway from north to south at the Hill Road. The collision occurred sometime between 8:30 a.m. and 10 minutes before 9. It is common knowledge that school commences at 9 a.m. The driver of the truck did not sound his horn at any time. He made no effort to reduce his speed until he attempted to hit the brakes, when he belatedly saw the minor bicyclist in the intersection 50 feet in front of truck.

Turning to the majority opinion, my first disagreement is with its paraphrasing or summarizing of the evidentiary facts contained in the record. The opinion states:

> The evidence established that appellant's driver, Cecil Gower, *had kept the boy under observation as continuously "as driving conditions would permit"*; that he had observed Mark, riding his bicycle on the opposite *side of the highway, at least 3 times within approximately 22 seconds* at distances ranging from 500 yards to 50 feet, and that Mark, at the "T" intersection, suddenly rode his bicycle so abruptly to his left in front of the pickup that Mr. Gower was unable, *even by swerving his vehicle,* to prevent the bicycle from striking the left front fender. (Italics mine.)

The record, certainly as I read it, fails to support portions of the majority's foregoing and crucial paraphrasing of the evidentiary facts.

First, the record does not establish that the driver "had kept the boy under observation as continuously 'as driving conditions would permit'." In fact the record calls for just the contrary conclusion. Here is the defendant driver's testimony:

Q. (Interrupting) As you were traveling east on the highway, did you notice the boy doing anything in particular?

A. No.

Q. Were you watching him all the time?

A. Well, you can't watch one particular place every minute and drive. I glanced at him as driving conditions would permit.

This self-serving statement cannot by itself support the conclusion that this driver observed the boy "as continuously 'as driving conditions would permit.'" Especially is this true when we consider the testimony of this same driver that there was nothing on the road for two or three miles ahead. Instead of ignoring the boy on the bicycle, the driver could have kept his eye on him the entire time and have used lesser concentration on the rest of the road since there was nothing there to concern him. Thus, for me, the only reasonable conclusion is that the driving conditions would have permitted the driver to have kept the boy under continuous observation. But he did not do so.

My next disagreement with the majority is over the statement that the defendant's driver observed the plaintiff "at least three times within approximately 22 seconds . . . ." There is no testimony from the driver that he observed the plaintiff three distinct times. As I read it, the record shows that the driver first saw the boy on his bicycle 400 to 500 yards from the intersection, and, again, when the truck was within 50 feet of the boy, and that he "glanced at him as driving conditions would permit." The majority uses the word, "continuously," in relation to this

latter phrase. The truck driver does not do so in his testimony. I can find no reference to "22 seconds" anywhere in the record, and I am at a loss to determine just where this figure came from.

Finally, I must question the statement in the majority opinion that "Mr. Gower was unable, even by swerving his vehicle, to prevent the bicycle from striking the left front fender." Consider the following testimony:

Q . . . before you started to swerve to the right, I think you testified that you were about, your left wheels were about two feet from the center line?

A Approximately, yes.

Q And at the time of the collision the left wheel was about two feet from the center line?

A Two or two and a half. There was very little variance in my travel.

Q So you didn't swerve at all?

A I would say if I swerved any at all it was just enough to miss the boy *and hit the front wheel of the bicycle.* (Italics mine.)

Giving the defendant's testimony the most weight and credence possible in his favor, this "swerve" was at the most 6 inches. This, it seems to me, does not approximate the degree of evasive action indicated by the majority's characterization of the events.

Perhaps more importantly, or fundamentally, I differ with the majority's statement pertaining to this case that "a motorist must exercise a higher degree of care for the safety of a minor using the highway, when the motorist observes the minor in a position of peril," citing *Shellenberger v. Zeman,* 48 Wn.2d 885, 297 P.2d 247 (1956). This restatement of the rule by the majority is, in my opinion, too much of a variation on the original *Shellenberger* theme. The restatement of the rule dilutes the standard of care demanded in these cases to the extent that the resulting duty seems very close to some of the principles of last clear chance—clearly not in issue here. The rule, exactly as stated in *Shellenberger,* is:

Generally, where an automobile driver has reasonable grounds to apprehend that a child may run or may ride a bicycle into the path of his automobile, a higher degree of care is required of the driver in operating his automobile than would be necessary under ordinary circumstances. In such a case, it is the driver's duty to exercise such a reasonable degree of care as the circumstances require. To impose liability, it is not enough that the driver saw the child; he must have been able to appreciate the danger in time to have avoided the injury, in the exercise of reasonable prevision. *Shellenberger v. Zeman*, 48 Wn.2d 885, 888, 297 P.2d 247 (1956). (Citations omitted.)

The *Shellenberger* rule, imposing a higher standard of care when a driver sees a child and knows that he might cross in the driver's path, is a far cry from requiring that the child be in a "position of peril" before the higher duty of care arises.

It might also be helpful to an evaluation of the law stated in *Shellenberger* to review the facts of that case, in which we affirmed the dismissal of the plaintiff's suit against the defendant. The defendant was driving her car north, at between 30 and 35 miles per hour, on Bothell Way (in Seattle) in the curb lane. There was an eight-foot asphalt shoulder with a curb and a sidewalk and then twenty feet of asphalt to the business buildings in the area. The defendant observed the plaintiff and another youngster riding their bikes on the strip of asphalt next to the buildings when defendant was approximately 150 feet away from them. They were then riding normally, and this continued as the defendant kept them under surveillance, until she saw them collide. The collision propelled the plaintiff from the sidewalk into the right-hand side of the defendant's car. The defendant testified that she saw the collision and hit her brakes. She was apparently skidding when the plaintiff ran into the side of her car.

Thus, there are many differences, factually, between the present case and *Shellenberger*. In *Shellenberger*, the defendant saw the boys on their bikes. They were in a safe part of the road. She kept them under surveillance. She

had no reason to anticipate that their paths would cross, but she saw them collide when she was 35 feet away. She executed a violent skid to avoid the collision. In the instant case, the driver knew or should have known that the plaintiff would be crossing the street to go down Hill Road to the school which the driver knew about. The driver did not see the plaintiff leave the north shoulder. In fact, the driver in this case did not see the plaintiff until the plaintiff had already crossed the road into the south lane. In *Shellenberger*, the defendant kept her eye on the boys when they were off the road, and she saw the collision which occurred too late for her to avoid, even though she made every effort to do so. Here, the driver really never saw the boy until the boy appeared in the south lane of the intersection. These differences explain why the defendant in *Shellenberger* satisfied the standard of care required while the driver in the present case failed to come close to meeting the higher degree of care demanded by the situation and imposed by the decisional law of the state of Washington.

The majority opinion completely ignores the comprehensive statement of the law in *Pritchard v. Hockett*, 140 Wash. 499, 500, 249 Pac. 989 (1926):

> The respondents testified that they did not see the child and his coaster wagon, either while he was going along near the northerly curb of the avenue, or while he was going diagonally across the street, until he was in front of them and only three, four or five feet away from the auto. It is our view that it was the duty of the driver of the auto to have seen the boy and his wagon as they were running along close to the northerly curb, and particularly should he have seen him when he turned from the curb and went diagonally across the street in front of the auto. There was no other traffic on the street to distract the attention of the driver. A glance by him up the street must have shown him the presence of the child, and, having seen him, he was bound to know that a child of the age of this one might undertake to cross the street in front of him. It is inconceivable to us that if the driver of the auto was on the look-out, as the law requires of every driver of an auto, he would not have

seen the child when he started across the forty-foot paved street; and, having seen him, it was, of course, his duty to have appreciated the danger and to have stopped his auto, or at least turned it so as to avoid the collision. Even if respondents had seen the child in his wagon when only ten feet away from the front of the auto, they must have realized the danger and would have had plenty of time, going at the slow speed they were driving, to have stopped their car and avoided the injury. It, therefore, seems clear to us that the respondents were guilty of negligence.

The *Shellenberger* and *Pritchard* cases and the rule of law they stand for—imposing a higher degree and standard of care—support and justify the trial court's action in ruling that the defendant was negligent as a matter of law.

While further discussion may be ineffectual, a portion of the trial court's oral opinion is quoted in order to indicate more fully why, in my judgment, he correctly applied the facts to the law as it stood prior to the advent of the majority opinion in the instant case:

I don't think reasonable minds could differ. I think the only conclusion that reasonable minds could draw from that is that he must have been day-dreaming or gone completely asleep. Surely, knowing of the presence of that boy on the bicycle coming toward him at that time, in that area, he owed some duty of looking, and the uncontradicted testimony, the defendant's driver's own testimony, is that he completely ignored and forgot about the boy's presence until there was a collision imminent. The amazing thing is there wasn't any other traffic according to the testimony, out there for the driver to worry about except one solitary bicycle. Certainly if he had testified he got about seventy-five or one hundred feet away and this boy was coming along toward him on the far side of the highway and suddenly he saw him start to make a turn right in front of the path of his vehicle, it would be an entirely different situation. Then there isn't any question but what it would have been a jury question as to the negligence of the defendant driver. . . . *But we asked him: "From the time you first saw that boy eight hundred feet away coming towards you on the other side of the road, and up to the time that you next saw him practically on the center line of the*

*highway fifty feet in front of your truck, where was he and what was he doing?" And the man doesn't have the slightest idea.* I don't think it is a jury question. There is a complete and total failure to maintain a lookout or to have the slightest concern for the safety of other users or other possible users of the highway. (Italics mine.)

The majority opinion seems to strike down the trial court's decision essentially because the trial judge made the following statement:

The believable testimony, is that he wasn't actually ever aware again of that boy sufficiently to be concerned about him until he is practically on the center line of the highway in front of him.

The majority implies that use of the term "believable" shows that the trial judge was weighing the evidence. This is exalting form over substance. As a matter of fact, the trial judge accepted all the testimony of the driver as to road conditions, speed, distances, time, etc., and the record shows that he gave the defendant the most favorable inferences from this testimony. When the trial judge referred to the "believable testimony," he was referring to the part of the driver's testimony where he was asked if he watched the boy all the time. He replied: "Well, you can't watch one place every particular minute and drive. I glanced at him as driving conditions would permit." As I have indicated earlier in this dissent, this statement, standing alone, is meaningless. The trial judge simply had to refer to the rest of the driver's testimony to decide what he meant by this ambiguous phrase. The driver testified that there were no other cars, pedestrians, or obstacles of any kind on the road for two or three miles, and, after the first observation, he did not really see the boy until some 50 feet before the impact.

Furthermore, these statements of the driver are more like expressions of opinion than statements of fact, and they are more harmful than helpful to him as to the higher duty of care demanded of him towards the boy. These statements show that he did not have the boy under careful surveillance. Moreover, the testimony conclusively shows

that he was not even carefully watching the intersection and the section of the highway where he knew children would be crossing to go to school. The statement that he glanced at the boy "as driving conditions would permit" is utterly meaningless unless and until related to some significant or emergency driving condition or hazard, and the testimony certainly shows none existing.

The trial court was correct in instructing the jury that the defendant was negligent as a matter of law. It should be noted that we have two different tests for the distinct problems of when to instruct a defendant was negligent as a matter of law and when to grant a directed verdict:

> (1) . . . the question whether there has been negligence or contributory negligence is one for the jury unless the facts are such that all reasonable men must draw the same conclusion from them, in which event the question is one of law for the court; (2) that a motion for a directed verdict or for judgment notwithstanding the verdict admits the truth of respondent's evidence and all inferences that reasonably can be drawn therefrom and requires that the evidence be interpreted most strongly against appellant and in the light most favorable to respondent. *Shook v. Bristow*, 41 Wn.2d 623, 625, 250 P.2d 946 (1952).

These rules are also repeated in *Wilkinson v. Martin*, 56 Wn.2d 921, 923, 349 P.2d 608 (1960). Since we are dealing with a claimed error in instructing that the defendant was negligent as a matter of law, the test is whether reasonable minds could differ. The following summary of the record stresses the pertinent facts and answers that query. (1) The driver was very familiar with the road. (2) The driver knew a school was near by. (3) The driver knew that children on bicycles crossed the highway at the particular intersection to go to the school. (4) The driver knew that it was time for children to be going to school. (5) The driver knew or reasonably should have foreseen that a child in the plaintiff's position would probably be going to school and using the particular intersection. And, finally, (6) there was absolutely nothing on the road for *two or three miles* to distract the driver. Given this knowledge,

and, consequently, that plaintiff might cross in front of the truck, the driver owed the plaintiff "a higher degree of care" under the law as expressed in *Shellenberger* and *Pritchard v. Hockett, supra.* In my judgment, reasonable minds could not differ. The driver's vague awareness and lack of attention as to the child on a bicycle, traveling on a road devoid of traffic obstacles, coupled with the driver's knowledge of other circumstances, emphasized hereinbefore, does not begin to satisfy the high degree of care demanded by the situation.

For the reasons indicated, I am convinced that the judgment of the trial court should be affirmed.

ROSELLINI, C. J. and HAMILTON, J., concur with FINLEY, J.