IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BRAEDEN SIMON,<br><br>　　　　　Respondent,<br><br>　　v.<br><br>KELLY HOLGUIN and SPOUSE DOE HOLGUIN,<br><br>　　　　　Appellant. | No. 86611-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Kelly Holguin challenges several rulings from various stages of litigation in a tort action that stems from a collision at an uncontrolled intersection. She assigns error to the court's decisions to grant partial summary judgment in favor of Braeden Simon and to grant a continuance, its refusal to grant a new trial or remittitur, and a number of jury instructions. Because Holguin fails to establish reversible error, we affirm.

FACTS[1]

I.　The Collision

On February 27, 2020, Braeden Simon was riding his motorcycle southbound on 134th Avenue East, also known as Sunrise Avenue, approaching the intersection at 164th Street East in Pierce County. Kelly Holguin was driving

_____

[1] Additional facts are set out in each section as necessary for analysis of the various assignments of error.

a mid-size SUV[2] northbound on 134th and intended to turn left onto 164th. She turned her left signal on and stopped at the intersection for about 45 seconds before turning because there were three women with strollers at the corner who she thought might try to cross. She estimated that she glanced at the pedestrians for 5 seconds, looked for oncoming traffic for 10 seconds, looked back at the pedestrians for 5 seconds, and then started a "slow turn." When she turned, her vehicle collided with Simon's motorcycle in the uncontrolled, open intersection. Simon flew through the air and impacted a street sign, breaking the signpost and landing on the grass beyond it. As a result of the collision, Simon suffered severe life-changing injuries. The speed limit was 40 miles per hour and, at the time of the collision, traffic was minimal and the weather was clear.

134th at 164th is a five-lane arterial with north and south lanes for travel. There is a divider in the middle of the street with trees, which ends and becomes a dedicated left turn lane just before the intersection with 164th. 134th is designed with a gradual arc from the northwest to the southwest; it is not a straight north and southbound roadway. The two northbound and two southbound lanes are separated by dashed white lines. Opposing left-turn-only lanes are marked with a solid white line at the right side and an outside double yellow line at the left. There are no traffic controls at the intersection.

II.     Procedural History

On September 8, 2020, Simon filed his initial complaint against Holguin for negligence and damages. Holguin filed an answer on September 25 and both

---

[2] Sport utility vehicle.

denied negligence and asserted that Simon's own negligence either solely caused or greatly contributed to the collision. On October 7, Simon filed an amended complaint. The trial was initially set for September 7, 2021, but was continued to February 16, 2022.

During the discovery phase of the case, Simon disclosed his collision reconstruction expert Steve Harbinson and produced Harbinson's report and expert file. Relying primarily on Harbinson's report, Simon moved for partial summary judgment on November 5, 2021, asking the court to rule that Holguin was negligent as a matter of law and remove the issue from the jury's consideration. On December 8, the court granted summary judgment in part and denied it in part, ruling that Holguin was negligent as a matter of law because, as the disfavored left-turning driver, she failed to see the oncoming vehicle. However, the court also found that genuine issues of material fact remained regarding whether Simon was contributorily negligent.

On December 17, two months before trial, Holguin moved for a continuance to allow more time for discovery. Simon objected on several bases. On January 7, 2022, the court granted Holguin's motion and continued trial from February 16 to September 6. The court later moved the trial date to September 13.

The jury subsequently returned a verdict finding Simon comparatively negligent, concluding that both Simon and Holguin were proximate causes of his damages. The jury apportioned 95 percent of the fault to Holguin and 5 percent to Simon. The jury awarded Simon just over $44.7 million in damages.

On October 13, Holguin moved for a directed verdict and reconsideration of the partial summary judgment ruling that Holguin was negligent as a matter of law. The trial court denied both motions on October 17.

On November 14, 2022, Holguin filed motions for remittitur, seeking to reduce the $2 million awarded for past medical expenses, and for new trial. The trial court denied both motions.

Holguin timely appealed.

ANALYSIS

I. Partial Summary Judgment

Holguin first assigns error to the trial court's partial grant of Simon's motion for summary judgment, reiterating her assertion at trial that Simon was not visible to her when she began her left turn.

We review summary judgment orders de novo and engage in the same inquiry as the trial court, considering the facts and reasonable inferences in the light most favorable to the nonmoving party. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989); *Desranleau v. Hyland's, Inc.*, 10 Wn. App. 2d 837, 842, 450 P.3d 1203 (2019). Because we perform the same analysis, we consider only the evidence and issues raised before the trial court. *Wash. Fed'n of State Emps., Council 28, AFL-CIO v. Office of Fin. Mgmt.*, 121 Wn.2d 152, 157, 849 P.2d 1201 (1993); *see also* RAP 9.12. Summary judgment is proper if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). "A genuine issue of

material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

Summary judgment motions are governed by "'a burden-shifting scheme.'" *Bucci v. Nw. Tr. Servs., Inc.*, 197 Wn. App. 318, 326, 387 P.3d 1139 (2016) (quoting *Ranger Ins.,* 164 Wn.2d at 552). When seeking dismissal, "the moving party bears the initial burden of showing the absence of an issue of material fact." *Young*, 112 Wn.2d at 225. If the moving party satisfies its burden, it then shifts to the nonmoving party to "set forth specific facts evidencing a genuine issue of material fact for trial." *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). In opposing summary judgment, the nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

"Whether there has been negligence or comparative negligence is a jury question unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the courts." *Hough v. Ballard*, 108 Wn. App. 272, 279, 31 P.3d 6 (2001); *see also Shook v. Bristow*, 41 Wn.2d 623, 625, 250 P.2d 946 (1952). Negligence is the failure to exercise reasonable care. *Gordon v. Deer Park Sch. Dist. No. 414*, 71 Wn.2d 119, 122, 426 P.2d 824 (1967).

Simon met his initial burden on summary judgment. In his motion, he asserted that Holguin, as the disfavored driver, was negligent as a matter of law

for making a left turn into his path when he was the favored oncoming driver, because she failed to see him despite having over one thousand feet of unobstructed visibility. Simon further argued that his actions were immaterial to Holguin's negligence since she admitted she did not see or hear him before turning. In her deposition, Holguin, confirmed that she did not see Simon or hear anything before the accident, and she offered no evidence at the motion hearing to explain her failure in this regard or to challenge Harbinson's calculations and opinions.

Harbinson, a former traffic detective with advanced training and experience in collision investigations and reconstruction, prepared a report that determined Simon's speed at impact was 41-43 MPH. Although he did not incorporate the effect of Simon's impact with the street sign, his speed analysis was based on the trajectory of Simon's body post-impact. He calculated Holguin had over 1,150 feet of clear sightline down 134th in the direction of Simon's approach. Assuming Simon was traveling at 41-43 MPH, Harbinson calculated that Simon would have been in Holguin's view for approximately 17.4 to 18.2 seconds before the collision. Even assuming Simon was traveling at higher speeds, Harbinson's calculations indicated that Simon would have been visible to Holguin for approximately 13.2 seconds at 60 MPH and at least 10 seconds at 80 MPH. Additionally, Harbinson calculated that Simon had less than 1.7 seconds to perceive Holguin as a hazard after she entered his lane, which was insufficient time to prevent the collision.

There were three eyewitnesses on the sidewalk on the southwest corner of 134th and 164th and one eyewitness on 134th. Suzanna Odarchuk was walking

with Zhanna Nozdsrin, Veronica Musatkin, and their children. Jonathan Lawson, Simon's riding partner, was following Simon and witnessed the accident. Additionally, pedestrians several blocks away from the collision site, Larry Crowley and Monica Walker, did not witness the collision but saw motorcycles prior to the accident. The depositions of these witnesses, taken during the early stage of discovery, did not meaningfully dispute Harbinson's report. For example, Musatkin testified that she could not confirm whether Simon was speeding but noted that, even if he was, it was not by a significant amount. Odarchuk saw the motorcycle coming south on 134th in the right lane while she was waiting on the corner of the intersection and estimated it was going 45 MPH or "a bit over." More specifically, she estimated that the motorcycle was traveling at "about the speed other cars were going." Nozdsrin testified that she had time to glance north along 134th, see the motorcycles approaching, turn back and begin talking to her companions before the collision occurred. Lawson stated that he and Simon were traveling at approximately the posted speed limit before entering the large curve that turned Sunrise Avenue southward, but his motorcycle lost speed due to a mechanical issue. When he looked up, about a hundred yards behind Simon, he saw Holguin's car in the middle of the road. He described Simon's attempt to steer right to avoid the collision and noted that Simon struck the front passenger tire of Holguin's SUV, flew over the car, hit a street sign, and landed in a grass field. By contrast, Crowley, who did not witness the collision itself, testified that he observed two motorcycles "screaming" at speeds of 80-90 MPH, weaving between cars. Similarly, Walker, who also did not witness the crash, testified that she heard the

motorcycles approach from behind on Sunrise Avenue and saw them traveling faster than 40 MPH, possibly reaching 50, 60, or even 70 MPH, "enough to pass four, maybe five cars."

Pierce County Sheriff's Deputy James Cowan, who investigated the crash, reported that the motorcycles were likely traveling "a bit over the speed limit," possibly 50-55 MPH. Despite this, Cowan concluded that Holguin's failure to yield was the primary cause of the collision. He determined that Simon's speed was not a contributing factor because he would not have had sufficient time to react or swerve to avoid the crash.

Holguin argued that her decision to begin the turn was reasonable because she saw no oncoming traffic and Simon's excessive speed both caused the collision and prevented him from reacting to avoid it. She further contended that the testimony of Crowley and Lawson was sufficient to present to a jury because it was based on the rational perception of each witness and sufficient to defeat a motion for summary judgment. She also averred that the fact that Simon had insufficient time to react raises an issue of whether the collision was avoidable.[3] She contended that Simon's rate of speed is a direct issue of material fact to be decided by a jury because of the intimate nature of negligence and contributory negligence, and as a result, all liability questions, including that of her own negligence, should also be left to the jury.

---

[3] While facts regarding the results of the blood alcohol test that was conducted on Simon after the accident were not ultimately presented to the jury, Holguin also argued in her response to his motion for partial summary judgment that Simon's "intoxication . . . impacted [his] riding and reaction time." (Capitalization omitted.)

Drawing all inferences in favor of Holguin as the nonmoving party, the primary legal question is whether she provided sufficient evidence to raise a genuine issue of material fact to defeat Simon's motion for partial summary judgment. While Simon met his initial burden, the burden of production then shifted to Holguin. However, she cannot rely on "speculation, [or] argumentative assertions that unresolved factual issues remain" to survive summary judgment. *Seven Gables Corp.*, 106 Wn.2d at 13. Holguin failed to provide substantive evidence, beyond her own testimony and testimony of lay witnesses who did not witness the accident, to establish a genuine issue of fact as to whether Simon was visible. Nevertheless, she argues summary judgment on the issue of her liability was inappropriate because factual disputes existed regarding whether Simon exercised reasonable care. In her appellate briefing, Holguin relies on *Bordynoski v. Bergner* to argue that a trial court commits reversible error when it disregards one party's testimony, on which reasonable minds could differ, and finds that party negligent as a matter of law. 97 Wn.2d 335, 343, 644 P.2d 1173 (1982). In *Bordynoski*, a directed verdict case, the defendant was a following driver who struck a bicyclist attempting to turn into his lane. *Id*. at 336-37. Our Supreme Court held that the trial court erred in concluding a bicyclist was contributorily negligent and such negligence was the proximate cause of the accident as a matter of law because there were disputed facts, such as the speed of the following car and whether the injured bike rider was aware of the car's presence. *Id*. at 337-38. It further noted that these factual disputes made summary judgment inappropriate because determinations of negligence are typically reserved for the

jury unless reasonable minds could not differ in interpreting the facts. *Id*. at 338-41; *see also Pudmaroff v. Allen*, 138 Wn.2d 55, 67, 977 P.2d 574 (1999).

Holguin asserts that the trial court committed prejudicial error by summarily ruling on disputed facts and instructing the jury that her defense was not viable, while Simon's was. For this aspect of her argument, she again relies on *Bordynoski*, which emphasized that "issues of negligence and contributory negligence are so intertwined that they cannot realistically be dealt with as separate issues." 97 Wn.2d at 341. Holguin asserts that it was for the jury to decide whether or not it was reasonable for her to see Simon because he was coming around a curve and she looked and did not see him. She emphasizes Crowley's deposition, wherein he testified that Simon was speeding, and claims that if Simon was speeding around a corner, a reasonable person in Holguin's position could have perceived the conditions to be safe to turn.

However, Holguin's reliance on these arguments fails to overcome the evidentiary shortcomings in her case. Unlike in *Bordynoski*, where both the defendant's speed and the bicyclist's awareness were in dispute, Holguin did not present sufficient evidence to raise a genuine issue of material fact regarding Simon's speed or visibility. Harbinson's unchallenged report established that Simon was within Holguin's field of vision, and the eyewitnesses did not testify that Simon's speed was reckless. Holguin did not identify the "point of notice" at which Simon, in the exercise of reasonable care, would have known Holguin was not going to yield the right of way to him. She has produced no evidence to create a question of material fact about whether Simon was or was not there to be seen.

On appeal, Simon argues that partial summary judgment was appropriate because the original pleadings filed in response to the motion contained "no evidence, expert or otherwise, to explain [Holguin's] failure to see Simon." He further asserts that Holguin's argument on appeal fails because it relies on trial testimony that was not before the trial court when it ruled on summary judgment. Simon is correct that we cannot consider trial testimony when reviewing rulings on summary judgment as we perform the same analysis as the trial court on the materials and argument in the record at the time of the ruling. He relies on *Owens v. Kuro* to argue that a left-turning driver can be found negligent as a matter of law, without regard for the negligence of the oncoming driver, where a left-turning vehicle collides with an oncoming vehicle that was there to be seen. 56 Wn.2d 564, 572, 354 P.2d 696 (1960). That case is distinguishable as Owens was injured while riding as a passenger in his own northbound automobile when the driver attempted a left turn in a light-controlled intersection on a yellow light. *Id*. at 565. Nevertheless, our Supreme Court held that the left-turning driver had a duty to observe oncoming traffic, failed to see the approaching vehicle until the collision, and had an unobstructed view. *Id*. at 571-72. The court further emphasized that the oncoming driver's alleged contributory negligence did not negate the left-turning driver's negligence in turning directly into the vehicle's path. *Id*. at 572. The left-turning driver argued he had a right to rely on the assumption that the oncoming vehicle would stop at a yellow light. *Id*. The court rejected this, noting that because the driver did not see the oncoming car, he could not have relied on it to stop. *Id*. at 572-73.

Holguin's main argument remains that Simon's excessive speeding made him impossible to see and her testimony alone establishes that he was not visible. She claims that Simon was driving so fast and closed the distance between himself and Holguin's vehicle so quickly that he could not slow down or swerve to avoid a collision. Even if assumed to be true, the explanation does not address why she failed to see him when she had a duty to observe oncoming traffic. At the time of the summary judgment hearing, Holguin relied solely on her own testimony and that of lay witnesses to argue that Simon's speed prevented her from seeing him. This evidence does not establish that Simon was not visible or that a reasonable person in her position would have made the same turn. She also failed to provide any evidence to rebut Harbinson's findings that Simon was in her field of vision for at least 10 seconds or Cowan's report concluding that Simon's speed did not contribute to the crash. Again, viewing the facts in the light most favorable to Holguin, there was insufficient evidence to raise a genuine issue of material fact as to whether a reasonable person would have failed to see Simon too.

We conclude that the trial court properly granted Simon's motion for partial summary judgment.

II.    Motion for Reconsideration

Holguin next challenges the trial court's decision to deny her motion to reconsider or revise the partial summary judgment ruling.

After a month of trial and at the close of her case-in-chief, Holguin moved for reconsideration of the partial summary judgment order in which she was found to have been negligent as a matter of law. The trial court denied her motion,

explaining that its timing, so late in the proceeding, would "cause a tremendous amount of prejudice to the Plaintiff" and would "be very confusing for the jury," who had been informed from the start of trial that Holguin's negligence was established.

The parties disagree about whether Holguin's motion was made under CR 59(a)(4), which governs motions for reconsideration based on newly discovered evidence. Simon argues that Holguin's motion relied on claims of "new and material evidence that it could not have discovered and produced' previously" and should be treated as a motion for reconsideration under CR 59(a)(4), which is reviewed for an abuse of discretion. *Go2Net, Inc. v. C I Host, Inc.*, 115 Wn. App. 73, 88, 60 P.3d 1245 (2003). An abuse of discretion is a decision or ruling which is manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. *Nichols v. Peterson Nw., Inc.*, 197 Wn. App. 491, 498, 389 P.3d 617 (2016). "A decision is manifestly unreasonable if the trial court takes a view that no reasonable person would take." *Clipse v. Com. Driver Servs., Inc.*, 189 Wn. App. 776, 787, 358 P.3d 464 (2015). "[A] trial court's decision rests on untenable grounds or reasons if the trial court applies the wrong legal standard or relies on unsupported facts." *Id*.

"CR 59 deals exclusively with judgments and orders entered following a verdict." *Chaffee v. Keller Rohrback, LLP*, 200 Wn. App. 66, 75, 401 P.3d 418 (2017). "'[A] partial summary judgment is not a final judgment, [nor appealable unless this particular interlocutory order is made appealable by statute,] but is merely a pre-trial adjudication that certain issues in the case shall be deemed established for the trial of the case.'" *Maybury v. City of Seattle*, 53 Wn.2d 716,

718-19, 336 P.2d 878 (1959) (internal quotation marks omitted) (second alteration in original) (quoting 6 Moore's Federal Practice (2d ed.) 2311, ¶ 56.20 [4]). CR 59 is not applicable to interlocutory orders. *Chaffee*, 200 Wn. App. at 77.

Holguin contends that because the partial summary judgment order was interlocutory, it could be revised at any time prior to final judgment and should be reviewed de novo. However, she captioned her motion as one for reconsideration and argued it under that standard, not as a motion for revision. In her motion, she explicitly cited the abuse of discretion standard under sections entitled "discretion to reconsider" and "grounds for reconsideration." (Capitalization omitted.) At the motion hearing, Holguin further argued that "there is substantial evidence via expert testimony that Mr. Simon was speeding such that Ms. Holguin's actions could've been reasonable and not negligent, and the collision could still have occurred" and "new facts in evidence as presented to the jury that have raised a question of fact as to Ms. Holguin's negligence." Even if we accept Holguin's new argument on appeal that it was actually a motion for revision, she fails to demonstrate how the trial court erred when it applied the standard relevant to the motion she herself presented as one for reconsideration, particularly given that is the standard her own counsel argued in the trial court.

Holguin argues that trial courts do not have discretion to make errors of law, but she fails to specify what errors of law the trial court made other than her continued assertion that the adverse ruling was erroneous. The court considered Holguin's new expert testimony, including her expert witness Allan Tencer's report that attempted to explain why she did not see Simon when she looked. Yet, the

court concluded that the new evidence did not change the fact that Holguin "still was the disfavored driver who took a left turn" and failed to see Simon. The record demonstrates that the trial court considered the new evidence and made the following determinations:

> The evidence cited does relate to the driving of Mr. Simon, but it doesn't relate to the Defendant's actions so much in that she still was the disfavored driver who took a left turn, and her testimony was still that she did not see Mr. Simon. And there were some pedestrians on the corner that may have drawn her attention away, but she looked and then did not—she looked down the road and then looked towards where she was turning, and I forget—a number of seconds passed by and she made the turn. And so that was the reason for granting the summary judgment. And that reason hasn't really changed.
>
> What is at issue in this trial is comparative fault and whether or not Mr. Simon has comparative fault, and it really relates to this issue that the Defense has brought up in this motion to reconsider. Does Mr. Simon have comparative fault? Was he traveling at an excessive speed? And that will be a decision for the jury that they'll have to make, but it doesn't cause the [c]ourt to question the decision on the summary judgment. . . .
>
> So for all these reasons, the [c]ourt will deny the motion for reconsideration.

The expert testimony addressed Simon's actions but did not alter the fact that Holguin, by her own admission, did not see Simon despite looking in his direction.

We conclude that the trial court correctly ruled on Holguin's motion, based on her own framing and argument, and did not abuse its discretion.

III.    Jury Instructions

Holguin next asserts that the trial court erred in its decision to give jury instructions 6, 7, 8, and 16. Simon, however, avers that Holguin failed to preserve this assignment of error. We agree with Simon.

An appellate court may refuse to hear any claim of error not raised at trial. RAP 2.5(a); *Fireside Bank v. Askins*, 195 Wn.2d 365, 374, 460 P.3d 157 (2020). Regarding jury instructions, any objections to the instructions, as well as the grounds for the objections, must be put in the record to preserve review. *Millies v. LandAmerica Transnation*, 185 Wn.2d 302, 310, 372 P.3d 111 (2016). Objections must be made before the reading of the instructions to the jury to permit the trial court to correct any error that may exist. *See* CR 51(f); *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 746, 310 P.3d 1275 (2013). We consider a claimed error in a jury instruction only if the specific issue was timely raised to the trial court by a specific adequate exception to that instruction. *Van Hout v. Celotex Corp.*, 121 Wn.2d 697, 702, 853 P.2d 908 (1993). "[J]ury instructions are sufficient if 'they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied.'" *Cox v. Spangler*, 141 Wn.2d 431, 442, 5 P.3d 1265 (2000) (quoting *Hue v. Farmboy Spray Co.,* 127 Wn.2d 67, 92, 896 P.3d 682 (1995)). The specific language of jury instructions is within the discretion of the trial court. *Douglas v. Freeman*, 117 Wn.2d 242, 256, 814 P.2d 1160 (1991). We review jury instructions de novo, asking first whether an instruction is erroneous, and second whether the error prejudiced a party. *Cox*, 141 Wn.2d at 442.

Careful review of the record reveals that Holguin did not object to jury instructions 6 and 16. In fact, she proposed jury instruction 16 and agreed to its final wording. She also expressly agreed to jury instruction 6. Accordingly, she has waived review of instructions 6 and 16. Holguin did object to jury instructions

7 and 8, but her objections were not substantive and differed from those she now presents on appeal. At trial, she merely argued that instruction 7 was duplicative and "not necessary," and that instruction 8 contained inappropriate bracketed language from Washington Pattern Instruction 23.02 referencing the special verdict form. These objections were not sufficient to preserve the errors Holguin now assigns to those instructions.

Holguin contends that she is entitled to a new trial because the jury instructions improperly emphasized her negligence, claiming that the "trial court's error resulted in the jury being told repeatedly by the court that Holguin was negligent because she failed to 'see what was there to be seen' and that she was unreasonable when she made her turn." Holguin did not raise this specific issue at trial and, therefore, did not preserve it for review. *See Van Hout*, 121 Wn.2d at 702.

In her reply brief, Holguin does not dispute that she failed to specifically object that the instruction overemphasized her negligence. But she cites a footnote from *Kaplan v. Northwest Mutual Life Insurance Co.* to argue that this court has previously "summarily rejected" this procedural argument. 115 Wn. App. 791, 804 n.6, 65 P.3d 16 (2003). The footnote states,

> We summarily reject Northwestern Mutual's contention that Kaplan waived the ambiguity issue by submitting instructions, which the trial court gave to the jury, regarding interpretation of ambiguous contract language. *At that stage of the proceedings, having lost the summary judgment motion, Kaplan was entitled to request the most favorable instructions available to him based on the trial court's view of the applicable law.* Neither was Kaplan required to bring a futile CR 50 motion at the close of the evidence, asking the court to reverse its previous summary judgment ruling, in order to preserve the issue for appeal. In any event, the record shows that Kaplan

again reminded the trial court of the applicable law regarding ambiguous insurance clauses, while arguing against Northwestern Mutual's CR 50 motion.

(Emphasis added.) Holguin argues that we should reject Simon's waiver argument here as well. In *Kaplan*, the court held a CR 50 motion was not required in order to preserve the appeal of a denial of summary judgment because the decision turned solely on an issue of substantive law, the interpretation of an insurance policy clause, rather than disputed issues of material fact. Holguin's reliance on *Kaplan* is misplaced.

Because these arguments were not presented in the trial court, they are waived and we decline to reach the merits of Holguin's challenge to the jury instructions.

IV.    Late Disclosed Experts

Holguin next challenges the trial court's decision to admit Simon's late-disclosed experts. Simon avers that she waived this assignment of error because she abandoned her motion to strike his new experts and instead requested a 90-day trial continuance. We agree with Simon.

During the hearing on Holguin's motion to exclude Simon's late-disclosed witnesses on September 12, 2022, Holguin's counsel stated,

> I think that if Your Honor excluded these experts, that might have us have to try the case again. And we're certainly not looking to try this case twice.
>     So I think that the only fair result under the *Burnett*[4] [sic] factors is at least a 90-day continuance.

---

[4] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997).

We decline to address this issue on the merits because Holguin's briefs fail to provide any citation to authority or supporting argument as to why the trial court erred in denying her motion to strike Simon's expert witnesses, especially after she abandoned that motion at the hearing. "[T]his court does not review issues not argued, briefed, or supported with citation to authority." *Christian v. Tohmeh*, 191 Wn. App. 709, 727-28, 366 P.3d 16 (2015); *see also* RAP 10.3(a)(6). Furthermore, in her reply brief, she concedes this error by clarifying, "Holguin seeks review of the trial court's decision on a continuance, not its decision to admit the testimony." This assignment of error was abandoned.

V.      Motion for Continuance

Holguin next challenges the trial court's decision to deny her motion for a continuance of the trial. She argues it abused its discretion because Simon introduced multiple new experts right before trial and she needed time to properly prepare.

"The decision to grant a continuance is at the discretion of the trial court and its decision will be upheld absent an abuse of discretion." *Harris v. Drake,* 152 Wn.2d 480, 493, 99 P.3d 872 (2004). "A trial court abuses its discretion if its decision is manifestly unreasonable, exercised on untenable grounds, or is arbitrary." *Id*.; *see also Weyerhaeuser Co. v. Com. Union Ins. Co.*, 142 Wn.2d 654, 683, 15 P.3d 115 (2000).

Two weeks after the discovery cutoff, Holguin disclosed two new experts, accident reconstructionist Patrick Riedlinger and biomechanical engineer Tencer. Riedlinger applied a projectile equation from classical physics to estimate Simon's

speed, concluding that he would need to be traveling at least 67 MPH to fly over the pedestrians' heads and strike the top of the signpost. Tencer's speed calculations, on the other hand, were based on fractures Simon sustained to his hips, sacroiliac joint, and pelvic ring. Tencer argued that such injuries could only result if Simon's center mass impacted the signpost with considerable force and the signpost provided significant resistance. He used the ultimate tensile strength of Douglas fir to claim Simon lost 30.4 MPH in speed due to impact with the signpost.

Simon moved to strike these experts, arguing that Holguin's late disclosure was willful because she lacked a legitimate explanation for failing to retain experts until the eve of trial and the late disclosure unduly prejudiced his trial preparation. On August 24, the trial court denied Simon's motion to exclude the experts.[5] Although Holguin disclosed them after the discovery cutoff, the trial court ruled the late disclosure was not willful and permitted Holguin to present evidence at the trial on Simon's contributory negligence. It also awarded Simon fees and costs.

On August 30, two weeks before trial, Simon disclosed two supplemental experts, a human factors expert, Kevin Rider, and motor vehicle damage expert, Mark Olson. Rider was retained to testify about Holguin's capacity to perceive and react to Simon during the collision, while Olson was to address the nature and extent of the vehicular damage, including damage to both Simon's motorcycle and Holguin's SUV. After Tencer explained in his September 5 deposition that he

---

[5] The trial court also granted the motion in part, mostly as to establishing production dates for various documents and a number of matters related to the question of fees and costs. Those rulings are not challenged on appeal.

concluded the signpost was peak-strength Douglas fir, Simon hired arborist Favero Greenforest to address the type of wood the signpost was made from and the amount of rot it had.

On August 31, Holguin moved to strike Simon's supplemental experts. Holguin's motion was scheduled for September 12, one day before the trial. But she retracted her request to strike Simon's new experts, and instead requested a 90-day trial continuance. Simon objected and averred that a 90-day continuance was impossible given his counsel's trial schedule and further argued the much longer continuance that would result from counsel's schedule would significantly burden Simon. Simon's counsel offered to call the new experts only in rebuttal, to give defense counsel more time to prepare for them, but Holguin was clear that she objected to allowing their testimony at all. The trial court denied both Holguin's abandoned motion to strike and her motion for continuance. The court found Simon's late disclosure of experts was neither willful nor deliberate because it came in response to Holguin's own late disclosures. Furthermore, the court determined that the opinions of Simon's experts were simply intended to rebut Holguin's new expert opinions. The court ordered that Holguin could depose the experts during several court recess days before opening statements, Simon's three new experts would testify only in rebuttal and not in his case-in-chief, and upon Holguin's request, the court would allow a brief trial recess for either additional discovery or other preparation regarding Simon's experts before rebuttal.

Holguin claims that the trial was conducted using new and speculative testimony that she had no meaningful opportunity to challenge, arguing that the denial of a continuance was unfair and prejudicial. She asserts that this resulted in a fundamentally unfair trial, with "invented 'facts' and speculation."

Both parties blame each other in their briefs for not retaining experts earlier, arguing who was less diligent. However, our review focuses solely on whether the trial court's decision to deny Holguin's motion was manifestly unreasonable, arbitrary, or exercised on untenable grounds; an abuse of discretion. *Harris,* 152 Wn.2d at 493. The judge explained his reasoning by saying,

> So just reviewing a little bit of the history in this case . . . the defense was preparing for trial, and they believed that—discovered that Mr. Simon's accident reconstruction expert, Mr. Harbinson, in calculating Mr. Simon's driving speed, they believed that he omitted or failed to consider that Mr. Simon collided with a street sign prior to coming to a stop after the collision.
>
> The defense consulted with an expert and learned that the street sign should have been considered when calculating Mr. Simon's speed at collision and that failing to account for the street sign, they believed, could greatly estimate [sic] Mr. Simon's speed. And so they proposed new witnesses, experts, who would rebut plaintiff's accident reconstruction expert's analysis of the collision.
>
> So going to what Ms. Kilpatrick said, it is sort of—we're caught in a vicious circle here, and now these witnesses are being proposed by the plaintiff, including the arborist Mr. Greenforest, as rebuttal witnesses, taking into account what Ms. Koehler offered as rebuttal witnesses. And, she indicated they're willing to call them as rebuttal witnesses in their rebuttal case. And the arborist, Mr. Greenforest, would be called in response to Dr. Tencer, and he's an expert in wood strength and could testify as to the strength of the wood.
>
> And that does seem to be relevant to this issue that was raised by the defense expert, relevant rebuttal evidence as well as the testimony of the other witnesses, Mr. Olson and Dr. Rider.
>
> So looking at the *Burnett* Factors [sic] that Mr. Leid talked about, I think it is important to go through those [f]actors. This was a Washington Supreme Court case, *Burnett* [sic] *v. Spokane Ambulance*, at 131 Wn.2d 484, and in that case, the [c]ourt held that when a party fails to obey an order entered under Rule 26(f) , the

[c]ourt in which the action is pending may make such orders in regard to the failure as are just under—citing Civil Rule 37(b)(2), and among the sanctions available are an order refusing to allow the disobedient party to support designated claims or prohibiting him from introducing designated matters in evidence.

This rule, the [c]ourt said, is consistent with the general proposition that a trial court has broad discretion as to the choice of sanctions for violation of a discovery order.

When the trial court chooses one of the harsher remedies allowed under Civil Rule 37(b), it must be apparent from the record that the [c]ourt considered whether a lesser sanction would probably have sufficed and whether it found the disobedient party's refusal to obey the discovery order was willful or deliberate and substantially prejudice the opponent's ability to prepare for trial.

In this instance, the [c]ourt finds that the plaintiff has not—that this was not willful or deliberate, because as Ms. Kilpatrick stated in her argument, it was in reaction to what they learned from deposing the defense experts and viewing their reports.

Trials are often of this nature. They can change quickly, and that's not unusual. There's no such thing as a perfect trial either, but we have to get through them as best we can. So the [c]ourt finds this wasn't a willful or deliberate violation of the [c]ourt's discovery orders or the discovery rules. The [c]ourt also finds that—my hope, through what I'm going to order, that there will not be prejudice, substantial prejudice, to the defense. I do take into account what Mr. Leid said in his argument. They do need a chance to review this evidence and depose the witnesses, but the [c]ourt is also taking into account Mr. Simon. This case has been pending for a long time, and he has severe injuries. I mentioned this last time. That does concern the [c]ourt. And I don't want to prejudice Mr. Simon any more through a long continuance.

So this trial is expected to last at least ten days and possibly more. The parties anticipate that motions in limine will take up September 13—Tuesday, September 13. And then we will choose a jury on Wednesday, September 14. That could go into September 15, if necessary.

While it is true that a continuance would have allowed the parties and the court additional time to thoroughly review the expert reports, conduct depositions, and file motions in limine, the trial court considered the potential prejudice to Simon and used its discretion to deny Holguin's motion. Furthermore, the case had been pending for two years and the trial had been continued multiple times at the time

of this challenged ruling. We conclude that under the circumstances of this case, it was not an abuse of discretion for the trial court to deny Holguin's motion for a continuance.

VI.     Motion for New Trial

Holguin next assigns error to the trial court's decision to deny her motion for a new trial.

"An order denying a new trial will not be reversed except for abuse of discretion. The criterion for testing abuse of discretion is: '[H]as such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial?'" *Moore v. Smith,* 89 Wn.2d 932, 942, 578 P.2d 26 (1978) (quoting *Slattery v. City of Seattle,* 169 Wash. 144, 148, 13 P.2d 464 (1932)); s*ee also Gilmore v. Jefferson County Pub. Transp. Benefit Area*, 190 Wn.2d 483, 502, 415 P.3d 212 (2018). "This rule of abuse of discretion specific to motions for a new trial stands in juxtaposition to the general test for abuse of discretion"; that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000).

RAP 10.3(a)(6) directs that an appellate brief includes the "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments. *See Joy v. Dep't of Lab. & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012); *Christian*, 191 Wn. App. at 728. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *West v.*

*Thurston County,* 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting *Holland v. City of Tacoma*, 90 Wn. App 533, 538, 954 P.2d 290 (1998)).

Here, Simon avers that Holguin waived this assignment of error by failing to provide substantive argument explaining how the trial court erred in denying her motion for a new trial. Holguin, in her reply, points to her opening brief, where she argued that the partial summary judgment ruling affected the trial. While she repeatedly claims throughout her briefing that the trial court deprived her of a fair trial, she does not separately argue the facts or law of this issue. Holguin's motion for a new trial raised many of the same arguments analyzed in the other sections herein, including the trial court's denial of her motion for a continuance and the contested jury instructions. Her motion for a new trial also raised several other issues that she has either declined to address on appeal or failed to support in her appellate briefing with substantive argument and citations to relevant legal authority. Because Holguin fails to properly present or argue these other additional issues and her assignment of error, we decline to consider them. *See West*, 168 Wn. App. at 187.

VII.    Motion for Remittitur

Finally, Holguin avers the trial court erred in its decision to deny her motion for remittitur. We disagree.

"Trial court orders denying a remittitur are reviewed for abuse of discretion using the substantial evidence, shocks the conscience, and passion and prejudice standard articulated in precedent." *Bunch v. King County Dep't of Youth Servs.*, 155 Wn.2d 165, 176, 116 P.3d 381 (2005). "The jury is given the constitutional

role to determine questions of fact, and the amount of damages is a question of fact." *Id*. at 179. "An appellate court will not disturb an award of damages made by a jury unless it is outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice." *Bingaman v. Grays Harbor Cmty. Hosp.*, 103 Wn.2d 831, 835, 699 P.2d 1230 (1985). "A jury's verdict will be overturned only if it is 'clearly unsupported by substantial evidence.'" *Dexheimer v. CDS, Inc.*, 104 Wn. App. 464, 475, 17 P.3d 641 (2001) (internal quotation marks omitted) (quoting *Herring v. Dep't of Soc. & Health Servs.,* 81 Wn. App. 1, 15-16, 914 P.2d 67 (1996)). "The requirement of substantial evidence necessitates that the evidence be such that it would convince 'an unprejudiced, thinking mind.'" *Bunch*, 155 Wn.2d at 179 (internal quotation marks omitted) (quoting *Indus. Indem. Co. of Nw., Inc. v. Kallevig,* 114 Wn.2d 907, 916, 792 P.2d 520 (1990)). "We strongly presume the jury's verdict is correct." *Id*. at 179. "A trial court's denial of a remittitur strengthens the verdict." *Id*. at 180; *see also Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp*., 122 Wn.2d 299, 330, 858 P.2d 1054 (1993).

Holguin argues that the jury's economic damages award was not supported by the evidence presented at trial and exceeded the range of substantial evidence. The jury's $2,000,000 award for medical expenses exceeded the maximum amount of evidence on record, $487,472.09.

Simon contends that the evidence demonstrated that he had incurred $1,512,527.91 in medical expenses up to mid-May 2022, four months before trial. He further asserts that after mid-May, he underwent significant additional treatment

related to the collision, which was not included in either figure. This treatment included multiple emergency department visits, multi-day hospitalizations, and four surgeries including the removal and replacement of hardware, as well as a bone biopsy, imaging, and repeated wound care. Simon argues that the jury could reasonably rely on the value of Simon's earlier medical expenses to extrapolate the costs of Simon's additional treatment and arrive at the $2 million award. He also notes that the jury was presented with ample evidence of the extensive additional medical care Simon received, allowing them to assess the reasonable value of the additional treatment.

Reviewing these facts under the "strong presumption in favor of the jury's verdict," we hold that the trial court did not abuse its discretion in denying Holguin's request to reassess Simon's economic damages award. *Bunch*, 155 Wn.2d at 176. Holguin fails to address how substantial evidence presented at trial fails to support a higher amount of economic damages. She argues that because Simon did not present specific evidence of the costs for medical procedures he underwent in the four-month gap between his last quantified medical expenses and the trial, the jury should not have awarded damages for this additional treatment. Holguin argues that Simon provided no bills to document these procedures and there was nothing for the jury to rely on regarding the cost of this medical care beyond speculation, but substantial evidence does not call for precise calculations. In fact, case law establishes the opposite: "[m]athematical exactness is not required." *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 757, 649 P.2d 828 (1982).

Accordingly, we hold that Holguin has failed to demonstrate that the trial court abused its discretion in denying her motion for remittitur.

Affirmed.

WE CONCUR: